UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**HAROLD GERNSBACHER, JR.,**

   Plaintiff,

v.

**WPCP DISTRIBUTORS, LLC, JUMA ELAJOU, AND WELLNESS AND PERSONAL CARE PRODUCTS INTERNATIONAL, LLC,**

   Defendants.

**WPCP DISTRIBUTORS, LLC**

   Third-Party Plaintiffs,

v.

**THE FAMILY FOUNDATION D/B/A THE KEEP FAMILIES GIVING FOUNDATION, JEWISH FUNDERS NETWORK, ALEX JAKUBOWSKI, AND DELEGATION OF JEWISH AMERICAN STUDENTS D/B/A KAHAL,**

   Third-Party Defendants.

No. 4:21-cv-0893-P

### MEMORANDUM OPINION & ORDER

Before the Court is Defendant Juma Elajou's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion"). ECF No. 43. Having considered the Motion, Plaintiff's Response (ECF No. 46), Defendant's Reply (ECF No. 49), and applicable law, the Court concludes that the Motion should be **DENIED** for the reasons set out below.

## BACKGROUND

The instant case arises from the breach of a contract to provide personal protective equipment ("PPE") at the onset of the COVID-19 pandemic. Plaintiff Harold Gernsbacher, Jr. sought to aid Jewish nursing homes and residential care facilities. He worked with Alex Jakubowski, a representative of the Jewish Funders Network, and the Delegation of Jewish American Students (doing business as Kahal) to create an effective means to acquire and distribute PPE. Gernsbacher pledged to donate money for this cause; Kahal would purchase the PPE. At the same time, the Keep Families Giving Foundation ("KFG Foundation") formed the COVID-19 Healthcare Response Fund ("PPE Fund") for the purpose of purchasing PPE. Lina Constantinovici, on behalf of the PPE Fund, offered to help Kahal and Jakubowski supply PPE to nursing homes and began searching for a supplier.[1]

WPCP Distributors, LLC ("WPCP") contacted Constantinovici through a networking website about supplying PPE. The PPE Fund sought disposable surgical gowns. So Juma Elajou, as the manager of WPCP, and Paige Sanborn, acting as a WPCP contact,[2] prepared and sent a draft purchase order to have the gowns shipped to Texas. Constantinovici (on behalf of KFG Foundation) and Elajou (on behalf of WPCP) entered into a purchase agreement. The PPE Fund then wired the payment to WPCP.

Gernsbacher alleges that Elajou breached the contract by appropriating the funds without ever delivering the gowns. Gernsbacher claims Elajou later delivered a partial, noncompliant order of gowns in a subsequent attempt to fulfill the contract. Eventually, Constantinovici and Jakubowski sought to have Elajou return the funds and to

---

[1]Gernsbacher asserts that he is the assignee of all of these Parties' claims arising in this dispute. Relevant for determining whether the Court can exercise personal jurisdiction over Elajou, only the KFG Foundation, the PPE Fund, and Gernsbacher are Texas citizens.

[2]Sanborn's status as a WPCP employee or agent is contested, however, it is irrelevant in the following analysis. All parties agree she was involved, at least in part, in connecting WPCP and the PPE Fund. Further, the alter ego analysis does not turn on her status at all.

terminate the contract, claiming that they never received gowns in compliance with the contract. Elajou agreed to the refund. The money, however, never came.

Gernsbacher sued WPCP and Elajou for, *inter alia*, breach of contract, negligence, conversion, and fraudulent misrepresentation. WPCP consented to this Court's jurisdiction and initiated a countersuit against Gernsbacher and several others. However, Elajou timely challenged the Court's jurisdiction and moved to dismiss for lack of personal jurisdiction. The Court held an evidentiary hearing on Elajou's Motion to assess the complicated factual allegations and evaluate the merits of the Parties' arguments.

## STANDARD

"When a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). When a court holds a pretrial evidentiary hearing on jurisdictional issues and both sides have the opportunity to fully present their cases, the plaintiff must establish personal jurisdiction by the preponderance of the evidence. *Walk Haydel & Assocs. Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

## ANALYSIS

Gernsbacher argues that the Court may exercise personal jurisdiction over Elajou personally because WPCP is merely his alter ego.[3] And through WPCP's consent to the Court's jurisdiction, Elajou

---

[3]Gernsbacher also argues that Elajou himself has sufficient minimum contacts with Texas to establish personal jurisdiction. The Court concludes that this argument is also meritorious; however, because the Court concludes that Elajou and WPCP are alter egos and Elajou, through WPCP, consented to jurisdiction, an in-depth analysis of this second jurisdictional theory would be largely duplicative. Elajou's invocation of the fiduciary-shield doctrine as a defense fails because WPCP and Elajou are alter egos. *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). Further, that doctrine does not apply in cases of intentional torts and fraudulent acts, as are alleged here. *See Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 659–60 (Tex. 2010).

3

has also consented to appear in this case. Neither party argues that the Court has *general* personal jurisdiction over Elajou. As explained below, the Court concludes that WPCP and Elajou are alter egos. Elajou is therefore subject to personal jurisdiction in Texas in this case.

### A. The Jurisdictional Alter Ego Test

"Limited liability remains the norm in American corporation law." *United States v. Jon-T Chem., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985). This corporate protection, however, may yield when a parent company or shareholder "totally dominates and controls its subsidiary" such that the subsidiary is merely "its business conduit or agent." *Id.* When a parent entity (or owner) treats a corporation as an "instrumentality" or "alter ego," courts may "pierce the corporate veil." *Id.* Whether a corporation is merely an alter ego is a "heavily fact-specific" inquiry that depends "upon the totality of the circumstances." *Id.* at 694. In applying this test, "courts are concerned with reality and not form." *Id.* at 693.

While "Texas courts are loathe to merge the separate legal identities" of two entities, *Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983), this aversion to veil-piercing is "less stringent" in the "alter ego test for attribution of contacts, i.e., personal jurisdiction," than for ultimate liability. *Stuart*, 772 F.2d at 1198 n.12. Even the type of legal claim underlying the litigation affects the rigor of the veil-piercing analysis. *See Miles*, 703 F.2d at 195 ("Texas courts have been less

---

Accordingly, Elajou's contacts, including calls and texts to Texas residents, contracting to ship and sell goods to Texas, and solicitation of further possible business, ECF No. 32 at 13, 14, 17, constitute the "requisite minimum contacts with Texas" to establish personal jurisdiction without offending traditional notions of fair play and substantial justice. *See Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018). Elajou's reliance on *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005), is misplaced because the Fifth Circuit and the Texas Supreme Court differ as to what constitutes the "full[est] extent [of personal jurisdiction] allowed by the Due Process Clause of the Fourteenth Amendment." *Denman Tire Corp. v. Compania Hulera Tornel, S.A. De C.V.*, No. DR-12-CV-027-AM/VRG, 2014 WL 12564118, at *8–9 (W.D. Tex. Mar. 31, 2014). Therefore, the Court would still exercise personal jurisdiction over Elajou under this theory.

reluctant to disregard the integrity of related corporations in tort, as contrasted with contract, cases.").

Moreover, jurisdictional veil-piercing and substantive veil-piercing involve different factors. *Licea v. Curacao Drydock Co.*, 952 F.3d 207, 213 (5th Cir. 2015) (citing *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174–75 (Tex. 2007)). The primary factor[4] is whether the parent entity "controls the internal business operations and affairs of the subsidiary" to a greater degree "than that normally associated with common ownership and directorship." *Id.* Additional factors include the distribution of the subsidiary's stock ownership by the parent, the separation of headquarters, the observation of corporation formalities, and the degree of control over the general policy and administration that the parent has over the subsidiary. *Id.* Allegations of fraud are "[n]ot pertinent to *jurisdictional* veil piercing." *Id.* (emphasis in original).

A corporation, however, is not the alter ego of another "merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders." *Id.* There must be some "plus factor." *Id.* When the "two entities cease to be separate," then the corporate veil may be pierced "to prevent fraud or injustice." *Id.* (quoting *PHC-Minden*, 235 S.W.3d at 175).

### B. Elajou and WPCP are alter egos because WPCP acts merely as Elajou's conduit under his complete control.

Here, a preponderance of the evidence supports Gernsbacher's allegation that Elajou and WPCP are alter egos. Elajou argues that he simply acts as WPCP's agent and that the two are not "one in the same." ECF No. 43 at 20. By his own admission at the hearing, Elajou, as manager of the entity, "run[s] WPCP on a daily basis" and is the only one "who has the authority to operate banking." ECF No. 78 at 30–31. While such powers are expected, even typical, for managing members

---

[4]The Fifth Circuit in *Licea* explicitly rejected using the "laundry list" of factors from *Jon-T Chemicals* because those "recite[d] factors [are] to [be] consider[ed] in substantive veil piercing rather than jurisdictional veil piercing." *Licea*, 952 F.3d at 213 n.2.

and the mere showing that Elajou controlled the company as the only director or manager is insufficient to conclude the alter ego test, s*ee, e.g., Leon Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 707 (Tex. App.—El Paso 1993, no writ); the alter ego test turns on "reality and not form." *Jon-T Chem.*, 768 F.2d at 693.

Elajou contends that he owns only "a scant 0.01% of WPCP's membership interest." ECF No. 43 at 21. This selective accounting, however, conveniently omits Elajou's 10% ownership in A Priori Holdings, an LLC that owns 74.99% of WPCP. ECF No. 44-2 at 4. Importantly, Elajou also manages A Priori Holdings. *Id.* While total ownership of a subsidiary does not itself prove alter ego, *see Licea*, 952 F.3d at 213, Elajou's factual ownership and control over WPCP belies his argument that he is a mere "agent" with "scant" interests in WPCP.

Elajou's actions demonstrate that he exercises a "greater degree" of control over WPCP than "normally associated with common ownership and directorship." *Id.* While Elajou insists that he acts "only with the parameters that obviously [he is] authorized to do so as manager," ECF No. 44-2 at 5, one example from the facts underlying this case quintessentially demonstrates that Elajou acts outside this scope.

Near the same time that WPCP contracted with KFG Foundation, Elajou's mother-in-law lent him $2 million to "be paid to anybody of [Elajou's] choosing . . . in reserve for [Elajou] at [his] choice when to send or do whatever with." *Id.* at 27. This loan may be interpreted as either a personal line of credit or a loan to WPCP because Elajou used this line of credit from his family to fund WPCP's orders. *Id.* However, Elajou then took WPCP's funds, including the money in dispute here, and set them aside "for a repayment or return of the money" he owed his mother-in-law. *Id.* He set this money aside in his personal account. *Id.* at 23. This exemplifies Elajou's dominion over WPCP, which he used both as his own instrumentality to repay the line of credit and as interchangeable with his own bank accounts.

Further, WPCP's operating agreement limits the managing member from incurring a debt or liability of more than $100,000 without prior written approval of all members. ECF No. 44-5 at 5. But nothing in the

6

record shows that he obtained the necessary approval before incurring $2 million in debt. Thus, this debt was either personal debt Elajou owed that was then secured by WPCP's assets (evidence of commingling between corporate and personal accounts) or company debt incurred without adherence to the WPCP's bylaws (evidence of disregard for corporate formalities).[5] Elajou's actions demonstrate that he "controls the internal business operations and affairs of" WPCP to a greater degree "than that normally associated with common ownership and directorship." *Licea*, 952 F.3d at 213. This evidence further undercuts his argument that that he and "WPCP maintain separate bank accounts" and that "WPCP has a formal operating agreement." ECF No. 49 at 9.

Elajou points to multiple aspects of the business to argue against the conclusion that WPCP is his alter ego: his status as an independent contractor, WPCP's other employees, the fact that he is not WPCP's registered agent, and their separate addresses. *Id.* Again, alter ego is determined by looking at "reality and not form." *Jon-T Chem.*, 768 F.2d at 693. So, Elajou's receipt of a Form 1099 and the appointment of a separate registered agent are not dispositive. Assuming, *arguendo*, that these factors weighed against Gernsbacher's alter ego theory, the totality of the circumstances still leans toward piercing the corporate veil here.

In addition to the above factors favoring the conclusion of alter ego, Elajou's attempt to partially refund the contract at one point failed because WPCP's accounts were frozen. ECF No. 44-2 at 28. This failure, and evidence of WPCP' banking records, *see* ECF No. 47-2 at 62–71, demonstrate a pattern of undercapitalization—another factor in the alter ego test. Overall, the evidence shows sufficient unity between

---

[5] Even if Elajou had written prior approval from all members for such a loan, the Court could only conclude that this example showed a deference to corporate formalities. He owns or manages 75% of the ownership interests and his wife comprises the remaining 25%; thus, prior approval would not necessarily demonstrate that he exerts only an appropriate amount of control over WPCP. The commingling of funds between WPCP and Elajou still evinces an alter ego relationship.

7

Elajou and WPCP that any separateness between them has ceased; therefore, the Court concludes that Elajou and WPCP are alter egos.

### C. The interest of justice is better served here by piercing the corporate veil than by preserving the corporate fiction.

Moreover, at this point in the litigation, the Court is merely determining whether to pierce WPCP's corporate veil for the purpose of asserting personal jurisdiction over Elajou. While this analysis necessarily implicates due process considerations, *see Licea*, 952 F.2d at 212, the test is less rigorous than for ultimate liability. *See Stuart*, 772 F.2d at 1198 n.12. Thus, Elajou's reliance on the reasoning in *Michiana* is misplaced.[6] *See* ECF No. 49 at 10. The higher standard to determine alter ego for ultimate liability resolves this alleged discord.

Further, Gernsbacher brings claims of fraud, conversion, and negligence with his breach of contract claim. *See* ECF No. 32 at 38–44. These allegations of torts decrease the Court's deference to the corporate fiction if the deference is likely to benefit a tortfeasor. *See Miles*, 703 F.2d at 195. Gernsbacher's burden to prove the alter ego relationship is therefore slightly lessened. *See id.* And the Court concludes he has satisfied it.

Finally, fraud or injustice could result if the corporate fiction is observed. Elajou represents that WPCP can pay any judgment that Gernsbacher may win in this action. *See* ECF No. 78 at 38. He admits, however, that WPCP previously tried, and failed, to refund in part the money at issue here. ECF No. 44-2 at 28. WPCP's previous inability to

---

[6]Elajou cites *Michiana* to question if "a jury [ultimately] finds that Elajou is not the alter ego of WPCP, is the judgment void because the court never had jurisdiction over Elajou in the first place?" ECF No. 49 at 10. This stems from one of the Supreme Court of Texas's justifications for basing specific jurisdiction on a defendant's contacts rather than on whether those contacts were tortious. *See Michiana*, 168 S.W.3d at 791. In rejecting the directed-tort theory, the Supreme Court demonstrated the conundrum that approach would cause: "[I]f a jury absolves a defendant of tort liability, is the judgment void because the court never had jurisdiction of the defendant in the first place?" *Michiana*, 168 S.W.3d at 791. However, like the directed-tort theory, Elajou's attempt to apply this reasoning to this alter ego analysis "confuses the roles of judge and jury by equating the jurisdictional inquiry with the underlying merits." *Id.* at 790.

pay and Elajou's history of commingling funds from WPCP's bank accounts show that WPCP may be unable to pay any judgment rendered against it. Therefore, the Court concludes that the corporate veil of WPCP should be pierced here to assert jurisdiction because WPCP and Elajou are alter egos.

When entities are alter egos, one entity's consent to personal jurisdiction is sufficient to allow a court to exercise personal jurisdiction over both even if the other contests it. *See Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 654 (5th Cir. 2002). Because Elajou and WPCP are alter egos, WPCP's consent gives the Court jurisdiction over Elajou, despite his challenge. WPCP consented to personal jurisdiction in this Court, has been actively litigating against Gernsbacher, and even filed a countersuit. Accordingly, because Elajou's alter ego has consented to personal jurisdiction, Elajou has also consented. Thus, the Court concludes that it has personal jurisdiction over Elajou in this dispute.

## CONCLUSION

For these reasons, Elajou's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 43) is hereby **DENIED**.

**SO ORDERED** on this **8th day** of **July, 2022.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE